IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Mollie J. Jackson, | Civil Action No. 8:08-2855-JFA-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Mollie J. Jackson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 44 years old at the time of the ALJ's decision. (R. at 93.) She alleges she became disabled on January 1, 2004,[2] due to rheumatoid arthritis and Graves' disease. (R. at 146.) She has a ninth grade education (R. at 151) and has past relevant work as a fast food cashier and cook. (R. at 108.)

The plaintiff protectively filed an applications for DIB and SSI on February 26, 2005 (R. at 93-97, 758-61.) Her applications were denied in initial and reconsidered

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] This date was amended at the hearing. Plaintiff initially alleged a disability onset date of November 5, 2002. (R. at 39.)

determinations. (R. at 57-72, 728-36.) After a *de novo* hearing (R. at 35-53), an Administrative Law Judge (ALJ) denied plaintiff's claim on April 14, 2008 (R. at 21-30). As the Appeals Council denied the plaintiff's request for review (R. at 5-7), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant met the insured status requirements of the Social Security Act through June 30, 2004.
>
> (2) The claimant has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: Graves Disease; rheumatoid arthritis; hypothyroidism; coronary artery disease; and an affective disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to standing for 30 minutes at a time. She is limited to performing simple unskilled work. She can occasionally bend, stoop, crouch, crawl, kneel, crouch [sic] or climb stairs.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on September 24, 1963, and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR. 404.1563 and 416.963).
>
> (8) The claimant has limited education and is able to communicate in English (20 CFR. 404.1564 and 416.964).

(9) Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR. 404.1560(c), 404.1566, 416.960(c), and 416.966).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2004, through the date of this decision (20 CFR. 404.1520(g) and 416/920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

3

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the

Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find that her mental impairments satisfied the criteria of Listing 12.05; (2) applying the Medical Vocational Guidelines, dispositively; and (3) failing to explain his residual functional capacity determination. The Court will consider each objection in turn.

### I.  LISTING **12.05**

The plaintiff principally contends that the ALJ failed to recognize that medical evidence established the presence of a disabling mental impairment listed in section 12.05 of Appendix 1 to 20 C.F.R. § 404, Subpart P. Section or Listing 12.05 states in relevant part:

> 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied.
>
> . . .
>
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
>
> C. A valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function;
>
> . . .

20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05. Under Section 12.05(**B**), therefore, if the plaintiff demonstrates an IQ score of less than 60 she is automatically considered disabled. In contrast, there are two requirements under Section 12.05(**C**), which is at issue here. *See*

5

*Boatwright v. Secretary, Dept. of Health and Human Services*, 1989 WL 79720, at *2 (4th Cir. July 12, 1989). First, a claimant's I.Q. score must come within the listed range of 60 to 69 inclusive, and second, he must be able to demonstrate an additional significant limitation. *See id.* at *2. If both requirements are met, then the plaintiff is considered disabled and entitled to benefits. *See id.* at *3; 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

The defendant argues, as he always does, that the plaintiff also must satisfy the diagnostic description in the introductory paragraph of Listing 12.05 in addition to one of the four sets of criteria, defined in subsections A, B, C, or D. As quoted above, that introductory paragraph states mental retardation "refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior . . . ." 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05. This argument is not unfamiliar to the undersigned and has posed on prior occasions, and even until now, a source of confusion. The prevailing view among the circuit courts of appeal appears to unequivocally confirm the defendant's position. A recent and thorough discussion by the Fifth Circuit, which included a survey of relevant decisions, concluded that a claimant must, in fact, establish both the diagnostic portion of the introductory paragraph in addition to one of the severity indicators, delineated in subsections A - D. *See Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. June 8, 2009). The Fourth Circuit has apparently not directly considered it.

As it has in the past, the Court, without compelling alternative guidance from the Fourth Circuit, would defer to the essentially uniform judgment of other circuits. But, in application, questions still remain. To the Court, the language of the regulation, has always implied that if a plaintiff satisfies the requirements of one of the subsections of Section 12.05, then she has necessarily demonstrated the diagnostic portion of the introductory paragraph – that she has "significantly subaverage general intellectual functioning." *See*

6

12.05 of Appendix 1 to 20 C.F.R. § 404, Subpart P ("The required level of severity for this disorder *is met when* the requirements in A, B, C, or D are satisfied." (emphasis added)). The Fifth Circuit and other courts reason, however, that the introductory paragraph is purely diagnostic in quality while the subsections relate only to severity. To the Court, the bright-line characterization of the two portions of the Listing is somewhat confusing. It would seem that the introductory paragraph and the subsections both contain language that appears to relate to both severity and diagnosis. The phrase "significantly subaverage" certainly goes to severity but also has a diagnostic quality. Again, "deficits in adaptive behavior" seems to be a severity consideration. And while they are clearly distinct considerations, the precise analytical difference between the phrase "deficits in adaptive behavior" in the introductory paragraph and "additional and significant work-related limitation of function" in the subsection C eludes the undersigned.

The section does not easily break down between diagnostic and severity components. It seems to the court that a valid IQ score of a certain threshold tends to establish diagnosis, where a consideration of functional limitations tends to establish severity. And where the diagnosis criteria is in some grey range, to wit, 60-70 (subsection C), then an additional severity criteria is required – proof of an additional and significant work-related limitation of function. But where the IQ score falls below, 60, for example, as provided in subsection B (assuming the scores validity), then one would have in that score, arguably, a sufficiently strong indicator of both diagnosis and severity to not require some additional severity analysis. Or at least, that seems to be one reasonable interpretation of the Listing.

The Court would concede, however, as it has before, that, in addition to clear case law on point, the plain and express language of the regulations seem to confirm the defendant's position:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic

7

> description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*See id.* 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.00(A). Therefore, the Court would be ultimately be compelled to examine the diagnostic consideration in the introductory paragraph in addition to the rote score and functional considerations contained in the severity criteria, one of which must be present.

The salient problem here, however, is that the ALJ himself did not do this. The ALJ does not actually discuss the elements of the Listing or include any analysis of the record in light of them. The ALJ does not find that the plaintiff failed to satisfy either the diagnostic portion of the Listing or the severity criteria of Subsection C. (R. at 28-29.) Rather, that is the position the defendant has staked on appeal. The ALJ simply rejected the score. (R. at 29.) On this basis alone, the Court finds the decision not reviewable and, thus, suitable for remand. Because, however, the ALJ listed reasons for rejecting the score as generally not credible (although failing to explain how the diagnostic or severity criteria were specifically left unsatisfied) the Court will address them.

On April 19, 2004, Dr. John C. Whitley III, Ph.D. performed a psychological evaluation of the plaintiff, including aptitude testing. The plaintiff's observed scores plainly satisfy subsection (C) of the Listing. The plaintiff posted the following scores on the WAIS-III test:

| | |
|---|---|
| Full Scale IQ | 65 |
| Verbal IQ | 66 |
| Performance IQ | 70 |
| Verbal Comprehensive index | 67 |
| Perceptual Organization Index | 69 |

(R. at 225.)

Dr. Whitley specifically noted the plaintiff's special educational background and completion only to the ninth grade. (R. at 222.) It was also noted that the plaintiff's "performance across subtests varies little, with no statistically significant strengths or weaknesses . . . ." (R. at 224.) The plaintiff offers that this remark supports a conclusion that the plaintiff's testing was consistent and reliable as an indicator of her abilities. (R. at 224.)

The ALJ rejected that the plaintiff's mental impairments satisfied 12.05(C) because in spite of these findings, the plaintiff had reported that "she cooked and prepared meals from scratch," counted change, went grocery shopping, drove, and was able to perform simple instructions. ( R. at 28.) The ALJ further noted that Dr. Whitley had concluded that her language skills and grammar were "adequate" and that she was able to deal and communicate "adequately" with others." *Id.* On the basis of these items, the ALJ dismissed Dr. Whitley's scores and conclusions as inconsistent.

The Court finds this reasoning problematic. To the Court, there is nothing facially inconsistent about the testimony of daily living and the conclusions of Dr. Whitley as to the legitimacy of the plaintiff's IQ scores. The undersigned has no real idea whether they comport. And, frankly, neither should the ALJ. Although through experience the ALJ may have developed some lay intuition about such matters, he cannot actually interpret the evidence in such terms.

An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). As a lay person, an ALJ is "simply not qualified to interpret raw medical data ***in functional terms*** . . . ." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (emphasis added); *see also Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996) (stating that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for

9

that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("Because an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony."). Thus, whether or not the plaintiff's scores are consistent with "adequate" language or "change counting" or cooking seems to be a determination outside of his bailiwick. (R. at 22.) The ALJ does not actually rely on any expert opinion that such daily activities are, in fact, inconsistent with such IQ scores. He simply believes it. And, this is not a facial inconsistency in the medical records, where the physician, for instance, states on one occasion that the plaintiff can perform certain activities but then, without explanation or any changed circumstances, later concludes that she cannot. Rather, this is the ALJ substituting his lay judgment over the scores for that of Dr. Whitley's. It seems impermissible. *Young v. Bowen*, F.2d 951(4th Cir. 1988) ("Absent contrary medical evidence the Commissioner may not reject the competent judgment of a concededly reliable expert." ) The Court does not agree that substantial evidence exists to find inconsistencies between Dr. Whitley's narrative and the plaintiff's test scores.

The defendant contends that weighing the relative credibility of the evidence is precisely the role of the ALJ. But, here, the ALJ did not weigh competing pieces of evidence. He interpreted them.

The ALJ also relied on the consultive mental status evaluation submitted by Dr. Douglas S. Payne, who examined the plaintiff in May 2005. Dr. Payne noted that the plaintiff made her bed and mopped weekly; cared for her personal needs daily; cooked meals daily (such as spaghetti and meatballs, pork chops, and fried chicken) without the use of recipes; swept the floor, washed clothes, and washed dishes daily; paid bills monthly; shopped for groceries monthly; and initiated chores on her own. (R. at 405.) The plaintiff also reported to Dr. Payne that she "enjoyed lying in the sun and line dancing." (R. at 406.) Again, the Court has no idea what to make of such confessions. They do not obviously

10

imply gainful employment skills or clearly eliminate some degree of mental retardation. It seems that someone with fairly significant mental functioning could still participate in most of the identified activities. On what basis the ALJ believes otherwise, is simply not clear. The ALJ summarily concludes that these findings are not consistent with someone who has mild mental retardation. As stated, however, the ALJ has not linked these observations either to the diagnostic criteria or criteria in Subsection C.

Moreover, as the plaintiff emphasizes, Dr. Payne did not actually test the plaintiff's IQ. This point does not disqualify Dr. Payne's opinion entirely, but, in light of its abbreviated nature, it seems difficult to find that it is substantial evidence for which to reject Dr. Whitley's observations. This is particularly true in light of the Court's disagreement that Dr. Whitley's observations include some kind of internal inconsistency.

Lastly, the ALJ rotely cites the state agency physician's as an additional basis to reject the scores. (R. at 28.) No explanation is given.

Ultimately, the ALJ's Listing analysis is not specific enough to be considered on appeal. The ALJ has not explained which elements of the Listing have not been satisfied. The defendant cannot make a post-hoc proffer and the Court will not guess. The generalized discussion of the ALJ seems a thin reed.

The Court is not expert in mental impairments. The regulations recognize that rote IQ scores do not tell the whole truth about a persons capacity to function. This seems an imminently reasonable presumption. The Court, however, always has concerns where great effort is seemingly expended to determine that an individual can, in fact, work, where they undoubtedly suffer subaverage IQ scores, even if within a debatable margin of error. It does not seem too exacting for the Court to expect a more disciplined explanation before such scores can be so flatly disregarded. On remand, the ALJ should expressly consider the evidence in light of the demands of the Listing.

## II. Medical Vocational Guidelines

11

The plaintiff next contends that the ALJ erred in resorting to the Medical Vocational Guidelines ("Grid Rules") at step five of the sequential evaluation process. Grid Rules, "relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The Grid Rules are utilized at step five of the sequential evaluation in determining whether jobs exist that a claimant can perform, where the claimant's "impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. If, however, the plaintiff has nonexertional limitations in addition to exertional limitations, the guidelines are not to be treated as conclusive. *See* 20 C.F.R. § 404.1569; *Roberts v. Schweiker,* 667 F.2d 1143, 1145 (4th Cir.1981); *Pratts v. Chater*, 94 F.3d 34, 39 (2nd Cir. 1996). Non-exertional impairments include mental impairments, such as affective disorder and borderline intellectual functioning. *See Grant v. Schweiker*, 699 F.2d 189, \_\_\_\_ (4th Cir. 1983).

It is undisputed that the plaintiff is functionally illiterate, with a third grade reading level (R. at 225), and Dr. Whitley's scores, which the ALJ should be asked to reconsider, suggest borderline intellectual functioning at best. The ALJ conceded that the plaintiff had affective disorder as a severe mental impairment, and indicated that this condition would cause moderate limitations in her ability to maintain attention, persistence, and pace. (R. at 26.)

The ALJ found, however, that although the plaintiff suffered nonexertional limitations, those limitations did not have any effect on the occupational base of unskilled sedentary work, which the plaintiff allegedly could perform. The ALJ, therefore, applied the Grid Rule dispositively and declined recourse to a vocational expert. The Grid rule in question, rule 201.24, directs a finding of "not disabled" for a younger individual with a limited education, unskilled past work experience, and the residual functional capacity for sedentary work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table 2, rule 201.24.

12

It is true that "'the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids.'" *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988). (quoting *Channel v. Heckler*, 747 F.2d 577, 582 n. 6 (10th Cir.1984)). Rather, a nonexertional impairment precludes application of the grids only when the nonexertional impairment significantly restricts the full range of work the claimant may perform in his or her exertional category. *See Gossett*, 862 F.2d at 807-08. The proper inquiry, under *Grant*, is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable. If the condition has that effect, it is properly viewed as a "nonexertional impairment," thereby precluding reliance on the grids to determine a claimant's disability. *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir.1984).

The defendant contends that the ALJ found that the plaintiff's nonexertional limitations constrained her to unskilled work, which Grid Rule 201.24 already accommodates. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table 2, rule 201.24. The defendant argues, therefore, that the plaintiff's mental limitations do not further erode the occupational base already contemplated by the Grid Rule. The plaintiff has not really made any rejoinder. The plaintiff does not explain how her mental limitations would reduce the number of unskilled jobs, for which the Grid Rules already account. Accordingly, the Court is disinclined to find any error.

If, on remand, the ALJ again concludes that the plaintiff fails to satisfy the criteria of Listing 12.05, it seems that reliance on the Grid Rules for a determination of "disabled" would be required.

### III. Residual Functional Capacity

Lastly, the plaintiff contends that the ALJ did not explain his residual functional capacity ("RFC") assessment. The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at *1. "To determine the claimant's RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in

13

the record, including testimony from the claimant and family members." *Morgan v. Barnhart*, 142 Fed. Appx. 716 (4th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(3) (2004)). The ALJ found that the plaintiff had the residual functional capacity to perform simple, unskilled sedentary work with standing for no more than 30 minutes at a time, and no more than occasional bending, stooping, crouching, crawling, kneeling, and climbing stairs (R. at 27.)

As an initial matter, it is likely improvident to make any ruling concerning the ALJ's RFC assessment where there is some question about the adequacy of the consideration of the severity of the plaintiff's mental limitations. If the district court rejects that recommendation, however, the undersigned would not be inclined to agree with the plaintiff that the ALJ's RFC assessment was defective in its form.

In arriving at his opinion concerning the plaintiff's RFC, the ALJ discussed the medical and psychological records; cited objective findings which the ALJ believed showed that plaintiff was not as physically or mentally limited as alleged; discussed medical source opinions which the ALJ believed indicated that the plaintiff was not as limited as alleged; discussed the plaintiff's testimony which, again, the ALJ interpreted as evidencing that the plaintiff could perform the exertional requirements of sedentary work; discussed the plaintiff's daily activities; and provided reasons for concluding that the plaintiff lacked credibility overall. (See R. at 23-29.)

While the RFC may be wrong in regards to the effect of the plaintiff's limitations, it does not fail for want of explanation. The plaintiff has not made any serious effort to explain what else was required.

To the extent the plaintiff contends that the ALJ failed to consider whether she could work on a sustained basis, the Court agrees with the defendant that the point is overstated. The Fourth Circuit Court of Appeals has found that RFC determinations may contain implicit findings, including a finding of the ability to work on a regular and continuing basis. *See, e.g., Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) ("In light of SSR 96-8p, [the

ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight hour day.") The plaintiff points to the impact that flare ups of her rheumatoid arthritis would have on her ability to sustain work. The Court believes that it can reasonably be assumed that the ALJ rejected this possibility or that he considered it otherwise accommodated in the present RFC. It is not that the Court means to guess as to the ALJ's intent, because it cannot. But, an ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted). A formalistic factor-by-factor recitation of the evidence is simply not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Dryer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ is not required to specifically refer to every piece of evidence in the decision).

The ALJ's explanation was sufficient, except for his consideration of the plaintiff's mental impairments as discussed *supra.*

And, for that reason, the matter is still suitable for remand.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, ORDERED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                      s/Bruce H. Hendricks
                                      BRUCE H. HENDRICKS
                                      UNITED STATES MAGISTRATE JUDGE

January 19, 2010
Greenville, South Carolina